UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| TERRI KNAACK, individually, and as Administrator of the Estate of Joseph Knaack, deceased, ANDREW KNAACK,<br><br>Plaintiffs,<br><br>v.<br><br>KNIGHT TRANSPORTATION, INC.; KNIGHT REFRIDGERATED, LLC; KNIGHT-SWIFT TRANSPORTATION HOLDINGS, INC.; CAROL WALKER,<br><br>Defendants. | Case No. 3:17-cv-00172-LRH-WGC<br><br>ORDER |

Before the court are 3 motions in limine (ECF Nos. 124, 125, 132) filed by Terri Knaack, an individual and administrator of decedent Joseph Knaack's estate, and Andrew Knaack, an individual, (collectively "plaintiffs"), and 9 motions in limine (ECF Nos. 171, 172, 173, 174, 175, 176, 177, 178, 179) filed by Knight Transportation, Inc.; Knight Refrigerated, LLC; Knight-Swift Transportation Holdings, Inc.; and Carol Walker (collectively "defendants"). Because the motions contain confidential material, the parties have also motioned the court to seal these documents in part. The court now rules on the pending pretrial motions.

**I.    BACKGROUND**

This is a wrongful death action that is scheduled for a jury trial to begin May 28, 2019. ECF No. 121. In December 2018, the parties filed a total of 12 motions in limine. ECF Nos. 78, 79, 80, 81, 83, 85, 87, 89, 91, 93, 94, 95. Due to errors in sealing these motions, the parties were

directed to refile their motions in limine, which they did in February and April, 2019. ECF Nos. 124, 125, 132, 171, 172, 173, 174, 175, 176, 177, 178, 179. The court now rules on all motions pending before the court.

## II. LEGAL STANDARD

"A motion *in limine* is used to preclude prejudicial or objectionable evidence before it is presented to the jury." Stephanie Hoit Lee & David N. Finley, *Federal Motions in Limine* § 1:1 (2018). The decision on a motion in limine is consigned to the district court's discretion— including the decision of whether to rule before trial at all. *See Hawthorne Partners v. AT&T Techs., Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993) (noting that a court may wait to resolve the evidentiary issues at trial, where the evidence can be viewed in its "proper context"). Motions in limine should not be used to resolve factual disputes or to weigh evidence, and evidence should not be excluded prior to trial unless the "evidence is clearly inadmissible on all potential grounds." *Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004). Even then, rulings on these motions are not binding on the court, and the court may change such rulings in response to developments at trial. *See Luce v. United States*, 469 U.S. 38, 41 (1984).

Generally, all relevant evidence is admissible. FED. R. EVID. 402. Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence." FED. R. EVID. 401. The determination of whether evidence is relevant to an action or issue is expansive and inclusive. *See Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 384-87 (2008). However, the court may exclude otherwise relevant evidence "if its probative value is substantially outweighed by the danger of" unfair prejudice. FED. R. EVID. 403. Further, evidence may be excluded when there is a significant danger that the jury might base its decision on emotion, or when non-party events would distract reasonable jurors from the real issues in a case. *See Tennison v. Circus Circus Enterprises, Inc.*, 244 F.3d 684, 690 (9th Cir. 2001); *United States v. Layton*, 767 F.2d 549, 556 (9th Cir. 1985).

## III. DISCUSSION

The parties have submitted a total of 12 motions in limine. The court will address each proposed exclusion below.

**A. Plaintiffs' Motions in Limine**

1. <u>Motion to Exclude All Evidence and Trial Testimony from Defense Expert David J. Weiner Regarding a 25% Personal Consumption Rate.</u>

Plaintiffs argue that defendants' economic expert erred in using a 25% consumption rate because he did so without having any specific or unique information regarding Mr. Knaack's spending. Plaintiffs argue that over the past six years Mr. Knaack has consumed between $35,000 and $40,000 per year, which equates to 3.3%. This difference, plaintiffs argue, shows Mr. Weiner's rate was guess work and not based on sufficient or reliable data, which precludes the evidence under Federal Rules of Evidence 702(b) and (c).

Defendants argue plaintiffs failed to provide any evidence about the decedent's lifestyle and household routine. For that reason, defendants were forced to retain Mr. Weiner and to use national averages to estimate a consumption rate, rather than values specific to the decedent. Defendants further argue that this issue goes to weight rather than admissibility of Mr. Weiner's testimony and should therefore be left to the jury.

To qualify as an expert witness, "a witness must be shown to be sufficiently qualified by 'knowledge, skill, experience, training, or education' before he will be permitted to give expert testimony." *Whiting v. Boston Edison Co.*, 891 F. Supp. 12, 24 (D. Mass. 1995) (quoting FED. R. EVID. 702). "Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010), *as amended* (April 27, 2010). Further, "[c]onflicting factors which weaken opinion evidence are, at least in the federal view, best left to the trier of facts rather than affecting the foundation for admission of the answer itself." *Burlington Northern Inc. v. Boxberger*, 529 F.2d 284, 287 (9th Cir. 1975) (citation and quotation marks omitted).

Based on Mr. Weiner's deposition, which provides his education, background, and work experience, he is a qualified expert. *See* ECF No. 124-3. Further, the Ninth Circuit previously found that a trial court did not abuse its discretion by allowing an expert to testify to a personal consumption rate that was based on "statistical studies of personal consumption habits of the heads of similar households." *Boxberger*, 529 F.2d at 287. Here, plaintiffs' challenges to Mr.

Wiener's methodology go more toward weight than admissibility. Therefore, the court denies plaintiffs' motion (ECF Nos. 124).

2. Motion to Exclude All Evidence and Trial Testimony from Defense Expert David J. Weiner Regarding the Discount Rate for Small Mines Development ("SMD").

Plaintiffs argue that the discount rate of 34.75% applied by Mr. Weiner is unreliable and based on insufficient facts as required by Federal Rules of Evidence 702(b) and (c). Plaintiffs argue that the proper discount rate was between 1.25% (risk-free, government backed security) and 8% for a risk-associated security, which is the discount rate used by their expert. Defendants argue that plaintiffs' argument is (1) moot because they have already obtained from SMD the decedent's equity interest in the company and plaintiff can't recover for that twice;[1] and (2) the 34.75% rate was proper under *Daubert* and Federal Rule of Evidence 702, as Mr. Weiner relied on reliable facts, data and methods, and properly applied those methods.

As discussed above, Weiner is a qualified expert. Additionally, plaintiffs' argument goes more to the weight of the testimony than its admissibility. Thus, the court denies plaintiffs' motion (ECF Nos. 125).

3. Motion to Exclude All Evidence and Trial Testimony Regarding Taxation Issues and Net Verses Gross Lost Income.

Plaintiffs argue that the court should exclude Mr. Weiner from discussing or introducing evidence regarding Mr. Knaack's taxes, specifically his gross verses net income, because it would lead to improper speculation by the jury regarding his future tax consequences. Plaintiffs further argue that because Mr. Weiner's expert report did not discuss taxes and because during his deposition, he specifically testified that he generally does not take taxes into account, this testimony should be excluded as a discovery violation under Federal Rule of Civil Procedure 26.

Defendants argue that because plaintiffs will have to present evidence of decedent's taxes in order to present evidence of damages, a blanket exclusion on defendants' ability to cross examine witnesses or present evidence on the issue would give plaintiffs a windfall and not accurately reflect the true loss. Defendants briefing does not include any argument as to why Mr.

---

[1] This argument is discussed fully below regarding defendants' fifth motion in limine.

Weiner's expert report did not include any information regarding his opinion on taxes, though Mr. Weiner, in his deposition, states that he generally does not factor in federal or state income taxes.

The court agrees that both sides should be permitted to present evidence on Mr. Knaack's gross verses net income. This case revolves solely on the issue of damages, including the lost future income of Mr. Knaack. The Supreme Court and the Ninth Circuit have made clear that tax evidence is admissible. *See Norfolk & Western Railway Co. v. Liepelt*, 444 U.S. 490, 493-94 (1980) ("It is his after-tax income, rather than his gross income before taxes, that provides the only realistic measure of his ability to support his family. It follows inexorably that the wage earner's income tax is a relevant factor in calculating the monetary loss suffered by his dependents when he dies. . . . We therefore reject the notion that the introduction of evidence describing a decedent's estimated after-tax earnings is too speculative or complex for a jury."); *Boxberger*, 529 F.2d at 293 ("But today's sophisticated jurors surely have had some personal experience in determining their own tax liability, and in today's tax-conscious society we are confident that our juries and judges, with the aid of such competent expert testimony as may be received, are equal to the task and the responsibility."). The court agrees with this precedent and finds that evidence of Mr. Knaack's taxes is admissible and relevant in factoring the monetary loss suffered by plaintiffs.

However, the court is concerned by defendants' failure to provide to opposing counsel Mr. Weiner's expert testimony regarding taxes and that in his deposition he testified that he generally does not include tax information in his reports. The rules of civil procedure and expert disclosures are very clear: the expert must provide "a complete statement of <u>all</u> opinions the witness will express and the basis and reasons for them." FED. R. CIV. P. 26(a)(2)(A) (emphasis added). If these expert opinions are not disclosed, "the party is not allowed to use that information or witness to supply evidence . . . at trial, unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1).

It is the court's preliminary impression that because Mr. Weiner's opinion regarding the tax implications was not disclosed it should be excluded. However, the court is not convinced

that plaintiffs have been unduly prejudiced by this failure—plaintiffs indicate they were made aware that defendants intended to argue about the tax implications in February of 2018, more than a year and half before trial. Therefore, the court denies plaintiffs' motion without prejudice (ECF No. 132) and reserves the issue for trial.

**B. Defendants' Motions in Limine**

    1. <u>Motion to Exclude Evidence and Arguments Relating to Plaintiff's "Loss of Business Income" Claim.</u>

Mr. Knaack was a shareholder of SMD, as well as employee. However, per the ownership agreement, SMD was required to buyback his shares following his death. Defendants argue that because the plaintiffs received the fair market value of the decedent's ownership share of SMD, they did not sustain any "loss of business income" as a result of his death. Defendants argue that plaintiffs are attempting to litigate a contract claim. Defendants further argue that allowing plaintiffs to recover the buyback from SMD and for loss of business income from defendants would mean plaintiffs are recovering twice for the same injury. Defendants finally argue that estoppel bars plaintiffs' recovery because plaintiffs did not object to the valuation of SMD used to price the buyback or the buyback option.

Plaintiffs argue that the two are mutually exclusive and the money paid to Terri Knaack from the SMD buyback has and should have no effect on the damages owed plaintiff by defendants for future lost income. Plaintiffs argue that had decedent not died he would have continued to receive K-1 income (and W-2 income) from the company while he continued working. It is this K-1 and W-2 income that plaintiffs will argue was his lost future income. Plaintiffs argue that the company's worth as calculated for the buyback has no bearing on the amount of lost future K-1 income plaintiffs are seeking.

Defendants' motion goes more to whether the jury should follow defendants' or plaintiffs' methodology for calculating lost income, which goes more to the weight of the evidence than its admissibility. Defendants' arguments are best left to cross examination rather than exclusion. The court denies defendants' motion (ECF No. 171).

///

2. <u>Motion to Exclude Testimony of Jesse Leib Regarding Opinions on Value for Selling SMD.</u>

Jesse Leib is the controller of SMD. He testified in his deposition regarding a hypothetical sale of SMD in which he personally valued SMD for double the fair market rate provided in the company's valuation report. Defendants argue this testimony should be excluded as it is was not based on any offers of sale, intent to sell, and was completely speculative lay witness opinion evidence that violates Federal Rules of Evidence 701 and does not qualify as expert testimony under 702. Defendants further argue this opinion evidence would be needlessly cumulative and possibly mislead the jury as to the actual value of SMD, causing undue prejudice to the defendants.

Plaintiffs argue that Mr. Leib is in the best position to present evidence of the value of SMD because as controller, co-owner, FRCP 30(b)(6) designee of SMD, and a Certified Public Accountant, his opinion is based on his knowledge of the company, not on speculation, and is proper under Federal Rules of Evidence 701. Plaintiffs further articulate that they do not intend to call Mr. Leib as an expert, but only as a 701 witness.

The court finds that as controller, FRCP 30(b)(6) designee, and an owner of SMD, Mr. Leib is permitted to opine as to its value. *See* FED. R. EVID. 701, advisory committee's notes on 2000 amendments ("most courts have permitted the owner or officer of a business to testify to the value or projected profits of the business, without the necessity of qualifying the witness as an accountant, appraiser, or similar expert. Such opinion testimony is admitted not because of experience, training or specialized knowledge within the realm of an expert, but because of the particularized knowledge that the witness has by virtue of his or her position in the business." (internal citations omitted)); *Impact Mktg. Int'l, LLC v. Big O Tires, LLC*, Case No. 2:10-cv-01809-MMD-VCF, 2012 WL 2092815, at *4 (D. Nev. June 11, 2012) ("The advisory committee note to FRE 701 states that business owners may present lay testimony regarding their company's profits, value, and damages."). Additionally, the court does not agree that Mr. Leib's testimony regarding the company's value would be unduly prejudicial or needlessly cumulative. Accordingly, the court denies defendants' motion (ECF No. 172).

7

3. <u>Motion to Preclude Reference to Business Equity Sums Paid to Mr. Knaack.</u>

As a shareholder of SMD, Mr. Knaack received quarterly distributions. Defendants argue that any evidence of the amounts paid out in these equity payments should be excluded because Mr. Knaack used this money to exclusively pay the taxes owed on his reported K-1 income. Defendants cite to Terri Knaack's deposition testimony in which she stated that Mr. Knaack instructed her not to spend the equity payouts so that he could use the funds to pay the taxes.

Plaintiffs argue that regardless of what purpose the income was used for, the jury should be allowed to hear the evidence that Mr. Knaack received these quarterly equity payments. Plaintiffs' further argue that these distributions to shareholders would have increased in the future and should be used to calculate damages owed.

Evidence of distributions paid to Mr. Knaack is relevant to the issue of damages. Further, how Mr. Knaack used those distributions does not go to the admissibility of the evidence. As the court found above, evidence of Mr. Knaack's taxes and the affect taxes may have on his future lost wages is admissible evidence. Therefore, the court denies defendants' motion (ECF No. 173).

4. <u>Motion to Exclude Reports and Testimony of Plaintiff's Retained Expert Economist Dr. Stan Smith Regarding Speculative Damages.</u>

Defendants motion the court to exclude Dr. Smith's expert testimony regarding loss of business income; loss of wages and benefits; loss of household and family housekeeping and home management services; loss of household/ family guidance; and loss of household/ family accompaniment services. Defendants argue that Dr. Smith's testimony as to intangible services will mislead the jury and that his estimates on household services and social services to the family are speculative.

Dr. Smith provides different future scenarios which provide for different damage amounts. In his deposition, Dr. Smith testified that this was done to give the fact finder alternatives and better inform them of differing calculations. Defendants dispute his calculation of loss of wages and employee benefits because he did not take into account the cost of gold, that the business was a mining business, or Mr. Knaack's profession in computing his life expectancy. Dr. Smith discussed his reasoning and methodology for how and why he made these

calculations in his deposition. Therefore, the court finds that defendants' arguments go to the weight not to the admissibility of the expert's testimony.

Defendants further argue that Dr. Smith's calculations of loss of household/ family housekeeping and household management services is flawed because he relies on statistical averages that don't reflect plaintiffs' actual loss. Dr. Smith discusses in his deposition that he is relying on peer reviewed methodology in making these calculations and cites to the journal article that provides his reasoning. Dr. Smith also testified that he reviewed Terri Knaack's and Andrew Knaack's testimony and used it when coming to his conclusions in this case, though his report does not specifically articulate how he took this evidence into account.

Plaintiffs argue that Dr. Smith and Mr. Weiner (defendants' expert) used a similar methodology for calculating loss of household/ family advice, counsel, guidance, instruction and training services and loss of accompaniment services, and came to similar conclusions. Finally, defendants also argue that hedonic damages (loss of relationship) should be excluded and the loss of accompaniment damages is really another way to obtain hedonic damages. In Dr. Smith's testimony, he articulates the difference between hedonic and other household services damages and why he finds them different. However, the record shows that plaintiffs do not intend to argue for hedonic damages, nor did Dr. Smith include this opinion in his report.

The court finds that Dr. Smith is qualified to testify as to these topics. Further, defendants' arguments go to the weight not the admissibility of Dr. Smith's testimony. While Dr. Smith's calculations and expert opinion differs from defendants' expert, Mr. Weiner, defendants have provided the court with no evidence that shows Dr. Smith is either unqualified or that his calculations and methodology are so flawed that they must be excluded on this motion. Therefore, the court denies defendants' motion (ECF No. 174).

5. <u>Motion to Require Offset of Damages Based Upon Payment of Put Option.</u>

As discussed above, decedent was a shareholder of SMD and upon his death, SMD was required to buyback his shares. Defendants argue that any award of damages must be offset by this buyback amount because to do otherwise would allow plaintiffs to double recover in violation of Nevada law.

1    The court agrees with defendants that any award of damages resulting from an increase in SMD's value in the future should be offset by the plaintiffs' present buyback award. For example, plaintiffs may argue that had decedent not been killed, he would have continued working at SMD, which would have increased in value. Upon his retirement, he would have exercised his buyback option, which due to the increase in SMD's value would have resulted in a higher buyback award. If the jury agrees and awards plaintiffs these damages, the award would be offset by the buyback amount. However, if, as discussed above regarding defendants' first motion, plaintiffs only argue that they are owed the W-2 and K-1 income that was lost over the period of time decedent would have continued working into the future, that award of damages would not be offset by the buyback award. Because it is unclear from the briefing what plaintiffs intend to argue at trial, the court denies defendants' motion without prejudice (ECF No. 175) and reserves the issue for trial.

6. Motion to Exclude the Opinions and Testimony Concerning Mr. Knaack's Alleged Wage Loss had he been Promoted to Project Manager.

Defendants motion this court to exclude Dr. Smith's testimony as to the amount of damages owed assuming decedent would have been promoted to project manager in the future. Defendants argue that because there is no evidence that Mr. Knaack would have received the promotion, was offered the promotion, or where he was "in line" for the promotion, this opinion is speculative. Defendants further argue that the salary used by Dr. Smith was also speculative.

Plaintiffs argue that Mr. Weiner, defendants' expert, also calculated future damages taking into account the possibility that Mr. Knaack may have been promoted in the future. The court finds that whether Mr. Knaack would have been promoted in the future and would therefore have higher future wage loss is a question for the jury. Therefore, the court denies defendants' motion (ECF No. 176).

7. Motion to Exclude Testimony by Don Rathburn at the Time of Trial.

The parties have stipulated to liability and that no evidence regarding negligence or wrongful conduct will be introduced at trial. Defendants argue that any testimony by Don Rathburn, the other victim of the accident, is to obtain sympathy and enflame the passions of the

jury. In particular, defendants are concerned that Mr. Rathburn intends to testify that he saw his friend "explode."

Plaintiffs argue that Mr. Rathburn's testimony will be limited, but as he is the only person who witnessed the accident, it is highly relevant. Plaintiffs articulated that they intend to use his testimony to introduce photographs of the incident and to discuss damages owed for pain, suffering, or disfigurement, pursuant to NRS § 41.085(4). Such evidence is normally admissible.

However, regardless of how plaintiffs intend to use Mr. Rathburn's testimony, it must be excluded. Per Local Rule 16-3(b)(12) and (c), the pretrial order must contain:

> (12) A list of witnesses, with their addresses, who may be called at trial. The list may not include witnesses whose identities were not, but should have been, revealed in response to permitted discovery unless the court, for good cause and on such conditions as are just, orders otherwise; and
>
> . . .
>
> (c) Unless offered for impeachment purposes, no exhibit will be received and no witness will be permitted to testify at trial unless listed in the pretrial order. However, for good cause shown, the court may allow an exception to this provision.

While Mr. Rathburn is listed as a witness on plaintiff's Fifth Supplemental 26(f) disclosure, he is not listed in the most recent Joint Pretrial Order, signed by this court on November 16, 2018 (ECF No. 72). Further, plaintiffs have made no good cause showing for failing to include Mr. Rathburn on their pretrial order witness list and make no mention of this error in their response briefing. Therefore, the court grants defendants' motion (ECF No. 177).

8. <u>Motion to Exclude Argument of Support of Non-Legal Heirs Including Step Grandchildren and Step Children.</u>

Pursuant to NRS § 41.085(4), the "jury may award each person pecuniary damages for the person's grief or sorrow, loss of probable support, companionship, society, comfort and consortium." However, this statute applies only to "heirs" of the deceased, and under Nevada law, heirs specifically excludes stepchildren and grandchildren. *See Frazier v. Price*, Case No. 2:06-cv-01196-KJD-PAL, 2007 WL 1656737, at *2 (D. Nev. June 5, 2007); NRS § 132.055. It is not contested that both plaintiffs are heirs of the deceased. However, defendants seek to exclude any reference to either the deceased's stepchildren or step-grandchildren because they are not

legally heirs of the decedent. Defendants argue that any mention of these family members is only an attempt to garner sympathy from the jury and effectively award support to non-heirs.

Plaintiffs argue that Terri Knaack will testify regarding the loss of support she received from Mr. Knaack. Some of the support she received from the deceased was directly regarding these stepchildren and step-grandchildren, including one grandchild who lives with her. Neither party cites to any case law that would support excluding testimony of how the deceased supported the plaintiff, even if that included reference to non-heirs. Therefore, the court denies the motion (ECF No. 178).

9. Motion for *Daubert* Hearing of Plaintiffs' Expert Dr. Stan Smith Regarding the Validity of the SMD Appraisal.

During Dr. Smith's deposition, he stated that SMD's valuation vastly underestimated the company's value. Defendants argue that because Dr. Smith is not a licensed appraiser and because he did not appraise the company himself, this opinion should be excluded as he is not an expert in the field. In the alternative, defendants requested a *Daubert* hearing in order to assess his expertise on the subject.

Plaintiffs argue there is no need for a *Daubert* hearing because the valuation of SMD is irrelevant to the issue of plaintiffs' economic damages. Plaintiffs argue that Dr. Smith will present opinion testimony regarding loss of future income (W-2 and K-1 income). They further argue that Dr. Smith is qualified to render such opinions: Dr. Smith appears to have experience with business valuation which would go to his opinion on this issue.

From the record and as the court has discussed above, Dr. Smith is a qualified expert. Moreover, he will be subject to cross examination. The motion goes more to weight than admissibility. The court denies defendants motion without prejudice (ECF No. 179) and reserves the issue for trial.

**C. Parties Motions to Seal**

A party seeking to file materials under seal bears the burden of overcoming the presumption in favor of public access to papers filed in the district court by showing that the materials are covered by an operative protective order and are also deserving of confidentiality.

*See Hagestad v. Tragesser*, 49 F.3d 1430, 1434 (9th Cir. 1995); *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2005). Specifically, a party must "articulate compelling reasons supported by specific factual findings that outweigh the general history of access and the public policies favoring disclosure." *Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1178-79 (9th Cir. 2006) (internal citations omitted).

Because this case revolves primarily around the issue of damages, the parties were required to delve into confidential information regarding the decedent's employer and business, SMD. The parties have stipulated to and the court has entered a protective order to safeguard confidential information obtained in connection to SMD. *See* ECF No. 21.

The court has reviewed the parties' motions in limine in this matter and finds some of the documents have a protected status and contain content deemed "Highly Confidential." The court agrees that the redacted portions of the motion and their responses are protected by the court's prior protective order and finds there is good cause for the information to remain under seal so as not to compromise SMD. Therefore, the court grants the parties' motion to seal (or maintain), corresponding to the following motions in limine and responses: ECF Nos. 124, 125, 132, 171, 172, 173, 174, 175, 176, and 179; 148, 150, 153, 155, 157, 167, 201, 202, and 203.

However, two of defendants' motion in limine contain no redacted material. ECF Nos. 177 and 178. As there is nothing in that motion that required redaction, the court finds no good cause that the motion should be sealed. The court therefore denies defendants' corresponding motions to seal and the sealed copies are hereby stricken from the docket.

**IV. CONCLUSION**

Because the parties have resubmitted their initial motions in limine under seal and to protect the highly confidential materials contained within, IT IS THEREFORE ORDERED that plaintiffs' initial motions in limine (ECF Nos. 78, 79, 80), and defendants' initial motions in limine (ECF Nos. 81, 83, 85, 87, 89, 91, 93, 94, 95) are hereby **STRICKEN**.

IT IS FURTHER ORDERED that plaintiffs' motions in limine (ECF Nos. 124, 125, 132) are **DENIED** in accordance with this order. The court **GRANTS** plaintiffs' corresponding motions to maintain.

IT IS FURTHER ORDERED that defendants' motions in limine (ECF Nos. 171, 172, 173, 174, 175, 176, and 179) are **DENIED** in accordance with this order. However, the court **GRANTS** defendants' corresponding motions to seal.

IT IS FURTHER ORDERED that defendants' motion in limine (ECF No. 177) is **GRANTED**. The court **DENIES** defendants' corresponding motion to seal and the sealed copy is hereby **STRICKEN**.

IT IS FURTHER ORDERED that defendants' motion in limine (ECF No. 178) is **DENIED** in accordance with this order. The court **DENIES** defendants' corresponding motion to seal and the sealed copy is hereby **STRICKEN**.

IT IS FURTHER ORDERED that plaintiffs' motions to maintain their oppositions to defendants' motions in limine and defendants' motions to seal responses are **GRANTED**.

The parties are reminded to follow the court's Order Regarding Trial (ECF No. 121) setting forth further deadlines for trial.

IT IS SO ORDERED.

DATED this 3rd day of May, 2019.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE